IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA
Alexandria Division

EVELYN A. WILLIAMS MOHLER,            )
                                      )
      Plaintiff,                     )
                                      )
v.                                    )       1:19-cv-615 (LMB/IDD)
                                      )
ANDREW SAUL, Commissioner of Social   )
    Security,                          )
                                      )
      Defendant.                     )

MEMORANDUM OPINION

On May 21, 2019, Evelyn Mohler ("plaintiff" or "Mohler") filed this civil action against

Andrew Saul, the Commissioner of Social Security ("defendant" or "Commissioner"), seeking

judicial review of the Commissioner's final decision denying her claim for social security

disability insurance benefits ("DIB"). The Commissioner's final decision was based on a

determination by an Administrative Law Judge ("ALJ") that plaintiff was not disabled as defined

by the Social Security Act ("SSA"), 42 U.S.C. § 301 et seq., and applicable regulations.

Following cross-motions for summary judgment, the assigned magistrate judge issued a Report

and Recommendation ("Report") which recommended granting summary judgment in favor of

the Commissioner.  Before the Court are plaintiff's Objections to the Report ("Objections"), to

which the Commissioner has responded in opposition. For the following reasons, the Objections

will be sustained, the plaintiff's Motion for Summary Judgment will be granted in part, the

defendant's Motion for Summary Judgment will be denied, the decision denying plaintiff DIB

will be vacated, and the matter will be remanded to the Social Security Administration for further

administrative action.

## I. BACKGROUND

On April 21, 2015, plaintiff, who at that time was 46 years old, submitted a claim for DIB

to the Social Security Administration alleging that she suffered from various back, neck,

shoulder, and other impairments which caused her chronic pain. On June 22, 2015, plaintiff's

claim for DIB was denied, and on December 4, 2015, plaintiff's request for reconsideration was

denied. Plaintiff subsequently sought a hearing before an ALJ, which was held on November 15,

2017. At that hearing, both plaintiff and a vocational expert testified. On March 7, 2018, the ALJ

issued a decision finding that plaintiff was not disabled as defined by the SSA and applicable

regulations. On March 20, 2019, the Appeals Council denied plaintiff's request for review of the

ALJ's decision. As a result, the ALJ's decision became the Commissioner's final decision

regarding plaintiff's claim for DIB. On May 21, 2019, plaintiff timely filed this action seeking

judicial review of the Commissioner's final decision.

In evaluating plaintiff's claim for DIB, the ALJ employed the requisite "five-step

sequential evaluation":

> The ALJ asks at step one whether the claimant has been working; at step two,
> whether the claimant's medical impairments meet the regulations' severity and
> duration requirements; at step three, whether the medical impairments meet or
> equal an impairment listed in the regulations; at step four, whether the claimant
> can perform [his or] her past work given the limitations caused by [his or] her
> medical impairments; and at step five, whether the claimant can perform other
> work.

Shinaberry v. Saul, 952 F.3d 113, 118–19 (4th Cir. 2020). Significantly, "[i]f the ALJ cannot

make a conclusive determination at the end of the third step, the ALJ must then determine the

claimant's residual functional capacity, meaning the most a claimant can still do despite all of the

claimant's medically determinable impairments of which the ALJ is aware, including those not

labeled severe at step two." Woods v. Berryhill, 888 F.3d 686, 689 (4th Cir. 2018). The

2

claimant's residual functional capacity ("RFC") is then used at steps four and five of the sequential evaluation.

Here, at step one, the ALJ concluded that plaintiff had not worked since her alleged disability onset date, March 31, 2014. At step two, the ALJ concluded that plaintiff suffered from 10 severe medical impairments all of which "more than minimally restrict[ed] [her] ability to perform basic work activity": "degenerative disc disease of the cervical spine," "degenerative disc disease of the lumbar spine," "right acromioclavicular separation," "left shoulder impingement," "chronic pain syndrome," "myofascial pain syndrome," "left hip bursitis," "bilateral pes planus," "bilateral carpel tunnel syndrome," and "left thumb osteoarthritis."[1] [Administrative Record (AR) at 18]. The ALJ also concluded that plaintiff suffered from numerous non-severe medical impairments which "d[id] not more than minimally restrict [her] ability to perform basic work activity" because they were "treatable without significant complication or stable with monitoring," including "irritable bowel syndrome," "tension headache," "cystitis," "hypertension," "asthma," "diabetes mellitus," "hyperlipidemia," colon and uterine "polyp[s]," and "obesity." Id. Despite this lengthy list, at step three, the ALJ concluded that plaintiff's medical impairments did not meet or equal the severity of an impairment listed in the regulations, and therefore a final disability determination could not be made without proceeding to step four.

Before proceeding to step four, the ALJ determined plaintiff's RFC, finding that she could perform light work as defined in 20 C.F.R. 404.1567(b) and 416.967(b) with various

---

[1] Plaintiff's medical impairments appear to have begun in 2010. That year, plaintiff fell down some stairs and hurt her neck. She had neck surgery in July 2010, which included anterior cervical discectomy and fusion at C5-6 and C6-7. [AR at 257]. Two weeks after her surgery, plaintiff was in a car accident that damaged her shoulder, requiring reconstructive surgery on her shoulder. [AR at 54].

physical limitations. One of the physical limitations determined by the ALJ was that plaintiff "require[d] the ability to periodically alternate between sitting and standing at irregular intervals *but with the understanding that [she] would still be capable of remaining on task sufficiently to maintain satisfactory production levels.*" [AR at 19 (emphasis added)].

In reaching the RFC determination, the ALJ concluded that the "claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms[2]; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record." [AR at 20]. The ALJ also found that the medical opinions of one of plaintiff's treating physicians, Dr. Theresa Carlini, were "not fully persuasive" and were entitled to "little weight" because, according to the ALJ, they "[were] not consistent with the medical evidence of record," "lean[ed] too much on [plaintiff's] subjective allegations concerning her symptoms," did not give "[a] rationale for the limitations" found, and "[were] an effective pronouncement of disability." [AR at 22].

At step four, the ALJ concluded that plaintiff could not perform her past work, which was classified as a Nutritionist Assistant and a Case Manager Assistant. Lastly, at step five, relying on his RFC finding and the opinion of the vocational expert, the ALJ concluded that plaintiff could perform other jobs in the national economy, such as an Inspector, a Grader/Sorter, and a General Office Helper. Therefore, the ALJ held that plaintiff was not disabled under the SSA and applicable regulations and was not entitled to DIB.

---

[2] Plaintiff's alleged symptoms include chronic pain in her neck, shoulder, back, and hip.

II. DISCUSSION

In this action, plaintiff essentially raises three challenges to the ALJ's decision: (1) that the decision relied on a vague sit/stand limitation; (2) that the decision relied on incorrect testimony from the vocational expert; and (3) that the decision provided insufficient reasons for affording little weight to Dr. Carlini's medical opinions. The magistrate judge's 15-page Report agreed with the Commissioner, concluding that none of plaintiff's challenges to the ALJ's decision was meritorious. Plaintiff raises two objections to the Report and Recommendation. Each will be addressed in turn.

A. **Standard of Review**

A district judge reviews <u>de novo</u> any part of a magistrate judge's report and recommendation to which a party has properly objected. <u>Pickett v. Astrue</u>, 895 F. Supp. 2d 720, 722–23 (E.D. Va. 2012). Under <u>de novo</u> review, the magistrate judge's report and recommendation "carries no presumptive weight," and the district judge "may accept, reject or modify the report, in whole or in part, and may recommit the matter to the magistrate judge with instructions." <u>Id.</u> at 723. In other words, the district judge must give "fresh consideration" to the relevant portions of the magistrate judge's report and recommendation. <u>Id.</u>

B. **Analysis**

1. RFC Determination

In her Objections, plaintiff argues that the RFC determination is improper because the ALJ stated that, despite plaintiff's need to alternate between sitting and standing at will, she "would still be capable of remaining on task sufficiently to maintain satisfactory productivity levels." [AR at 19]. According to plaintiff, "[w]hat is troubling is that the ALJ included a sort of fail-safe into that 'limitation' by declaring that even though Ms. Williams-Mohler required the

need to alternate positions, she would still be able to perform a job satisfactorily." Objections at 2.

The Court is similarly troubled by the ALJ's conclusory assumption that plaintiff's limitations would not diminish her work performance. Instead of "building a logical bridge" from the evidence to his conclusion, the ALJ leapt to the ultimate conclusion that plaintiff's limitations would not interfere with her job performance. See, Benfield v. Saul, 2020 U.S. App. LEXIS 30528; __- Fed. Appx. __ 2020 WL 568259 (4th Cir. 2020) (explaining that the ALJ must cite evidence that supports his conclusion and "build a logical bridge from that evidence to his conclusion") (citing Woods v. Berryhill, 888 F.3d 686, 694 (4th Cir. 2018) (brackets and internal quotation marks omitted). The ALJ does not explain how the evidence cited in the decision supports his conclusion that plaintiff would "remain on task sufficiently to maintain satisfactory productivity levels" while alternating between sitting and standing. In fact, a thorough reading of the record reveals no evidence to support that conclusion. Instead, what evidence there is regarding plaintiff's focus and attention tends to undermine the ALJ's conclusion.[3]

In reaching the RFC conclusion, the ALJ found that "claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record." [AR at 20]. To support his finding that "the claimant's alleged difficulties . . . are not

---

[3] Claimant testified at the hearing that she was discharged from her prior employment because of frequent absences and "not being able to concentrate." [AR at 41]. She further testified that after rising from a seated position, she sometimes must walk bent over for around 10 minutes before standing upright [AR at 44], that she often is drowsy as a side effect of the medications she takes for pain [AR at 49], and that she has difficulty remembering what she has read and concentrating when watching television. [AR at 53].

consistent with the objective medical evidence" the ALJ provides a chronological review of the record which, he concludes, "reinforces the inconsistency" and shows that "the claimant's symptoms are consistently controlled throughout." [AR at 21].

The ALJ's chronological review omits several important elements of plaintiff's medical record that should have been considered before he reached his conclusion. Had he considered them, they would have cast doubt on whether there was substantial evidence to support his RFC determination. First, the ALJ's chronological review failed to include the numerous references to plaintiff's use of pain medications and receipt of multiple other pain treatments. The ALJ did mention a "bilateral lumbar facet block," but emphasized that "it was noted [in the medical records] that the claimant received significant relief for a similar block on her cervical spine for 3 months" [AR at 21]; however, the ALJ's chronology does not state that the bilateral lumbar facet block described in the chronology itself provided plaintiff with relief. Indeed, although not listed in the ALJ's chronology, the record shows that the plaintiff continued to require pain medications after the facet block referenced by the ALJ and went on to receive numerous other treatments for pain, including trigger point injections and lumbar and sacral nerve ablations. [AR at 416].

The ALJ's chronological review also omits a May 2017 MRI of plaintiff's lumbar spine. [AR at 699-700; see also, AR at 421]. Perhaps this MRI escaped the ALJ's attention because it took place on the same day as an MRI of plaintiff's cervical spine and the results are reported in such a way that it would be easy to overlook that two separate studies were conducted. The May 2017 lumbar spine MRI showed "small diffuse disc bulge with mild facet hypertrophy producing mild bilateral neuroforaminal narrowing" at L3-L4 and "mild/moderate facet hypertrophy and ligamentum flavum infolding along with diffuse disc bulge causing mild/moderate bilateral

neuroforaminal narrowing and mild central canal stenosis" at L4-L5. [AR at 700]. When

plaintiff's treating physician, Dr. Hung, reviewed the MRI images, he noted additional abnormal

findings. [AR at 382]. Had the objective evidence of this May 2017 lumbar spine MRI been

considered, the ALJ might have reached a different conclusion regarding plaintiff's statements

concerning the intensity, persistence, and limiting effects of her pain.

After making the faulty RFC determination, the ALJ incorporated that determination into

the second of the hypotheticals he posed to the vocational expert at the hearing.

> Q    And, Dr. Ryan, let me begin by posing some hypotheticals. And for the
> sake of these hypotheticals, please assume who's [sic] between the ages of
> 46 and 50, who has a high school education and past relevant work
> experience in the jobs that you identified in the report that you filed this
> afternoon. Assuming a person with that background had the ability to
> occasionally lift and carry 20 pounds. Could frequently lift and carry 10
> pounds. Could stand and walk about six hours in an eight-hour work day.
> Could sit about six hours in an eight-hour workday Could frequently reach
> in all directions, including overhead, push and/or pull including operation
> of hand controls, handle and finger with both upper extremities. Could
> occasionally climb ramps and stairs, balance, stoop, kneel, crouch and
> crawl and never climb ladders, ropes, and scaffolds. Given that
> background and those limitations, could the past work be performed?
>
> A    Yes, Your Honor. . . .
>
> Q    And is that testimony consistent with the DOT?[4]
>
> A    Yes, Your Honor.
>
> Q    For hypothetical two, please assume the limitations given in hypothetical
> one and further assume this individual would require the ability to
> periodically alternate between sitting and standing at irregular intervals,
> *but with the understanding of the person would still be capable of
> remaining on task sufficiently to maintain satisfactory productivity levels.*
> Given those additional limitations, would the past work still remain
> available?
>
> A    No, Your Honor, it would not.

---

[4] The "DOT" is the Dictionary of Occupational Titles, a Department of Labor publication details
the physical requirements of a variety of jobs.

Q Would there be other work available?

A Yes, Your Honor. . . .

Q And is this testimony consistent with the DOT?

A It is, Your Honor.

[AR at 35–36 (emphasis added)].

"In order for a vocational expert's opinion to be relevant or helpful, it must be based upon a consideration of all other evidence in the record, and it must be in response to proper hypothetical questions which fairly set out all of claimant's impairments." Hines v. Barnhart, 453 F3d 559, 566, (4th Cir. 2006); see also, Benfield v. Saul, 2020 U.S. App. LEXIS 30528 (4th Cir. 2020). In Hines v. Barnhart, the Court of Appeals for the Fourth Circuit considered a very similar situation to the case at hand and rejected the vocational expert's opinion. In Hines, the vocational expert opined that there were other jobs that the claimant could perform, based on a hypothetical that assumed the claimant was able to work eight hours a day. Because there was no evidence to support that assumption, and the record contained evidence to the contrary, the court concluded that the vocational expert's opinion based on that hypothetical had no value. 453 F.3d at 566.

As in Hines, the vocational expert's opinion based on hypothetical two relied on an assumption that was not supported by the evidence. Because his opinion was in response to an invalid hypothetical, the vocational expert's testimony was neither relevant nor helpful, and the ALJ's reliance on the vocational expert's testimony at step five was unfounded. The Commissioner bears the evidentiary burden at step five, and that burden was not met here. See, Hines, 456 F.3d at 566.

2. <u>Dr. Carlini's Medical Opinions</u>

Plaintiff visited Dr. Carlini, a board certified Physical Medicine and Rehabilitation specialist and one of plaintiff's treating physicians, at least 18 times over a three-year period from 2014 through 2017, often complaining of back and neck pain. Throughout that time period, Dr. Carlini prescribed and adjusted plaintiff's pain medications, administered trigger point injections for plaintiff's pain, and referred plaintiff to physical therapy and to other physicians for pain treatments. [AR 254-256; 260-262; 264-266; 267-269; 270-272; 284-287; 333-336; 340-342; 372-375; 383-84; 385-388; 390-393; 394-396; 397-399; 402-404; 406-409; 410-413]. In her Medical Source Statement to the SSA, Dr. Carlini described plaintiff's prognosis as "guarded" and wrote that the plaintiff is only "able to sit 20-30 minutes – then requires break to stand and walk" and the plaintiff needs to lie down during the day. Dr. Carlini wrote that the plaintiff's report of pain were credible and that there was an objective medical reason for plaintiff's pain. In addition, Dr. Carlini anticipated that plaintiff would need to be absent from work more than three times per month due to her medical impairments and that plaintiff's condition was unlikely to change. [AR at 702-705]. Despite Dr. Carlini's role as plaintiff's treating physician, the ALJ afforded Dr. Carlini's opinion "little weight," finding that Dr. Carlini's opinion "is not consistent with the medical evidence of record, even though the doctor is a treating physician." [AR 22].

The social security regulations recognize that a treating physician can provide "a unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone." 20 C.F.R. 404.1527(c)(2). The regulations require that an ALJ give the opinion of a treating physician controlling weight if the opinion is "well-supported by medically acceptable clinical and laboratory diagnostic techniques" and "not inconsistent with other substantial

evidence in [the] case record." *Id.* Where, as here, an ALJ determines that the opinion of a treating physician is not entitled to controlling weight, the ALJ must consider the following factors in determining the appropriate weight to give the opinions:

1. the length of treatment and frequency of examination;

2. the nature and extent of the treatment relationship;

3. the degree to which the opinion is supported by medical evidence;

4. the degree to which the opinion is consistent with the record as a whole; and

5. the treating physician's specialization.

20 C.F.R. § 416.927(c)(2)-(5). "None of these factors may be omitted or disregarded by the ALJ in weighing the value of a treating physician's opinion." Ricks v. Comm'r, 2010 U.S. Dist. LEXIS 142966, 2010 WL 6621693 (E.D. Va. 2010) (citing Burch v. Apfel, 9 Fed. Appx. 255, 259 (4th Cir. 2001).

Here, the ALJ's opinion collapsed the two analyses into one, declaring "the undersigned finds the medical opinion of Dr. Theresa Carlini, M.D., not fully persuasive and thus gives only little weight to it, as it is not consistent with the medical evidence of record, even though the doctor is a treating physician." [AR at 22]. The ALJ did not consider all five of the required factors, and, instead, again relied on an incomplete review of the medical evidence from which the May 2017 lumbar spine MRI was missing.

Because the ALJ's decision lacks a detailed analysis of the five factors required to determine the appropriate weight to be given to Dr. Carlini's opinion, a meaningful review is not possible and remand is appropriate. See, Monroe v. Colvin, 826 F.3d 176 (4th Cir. 2016).

12

## III. CONCLUSION

For these reasons, this matter will be remanded to the agency for further proceedings consistent with this memorandum opinion.

Entered this _30_ day of October, 2020.

Alexandria, Virginia

/s/

Leonie M. Brinkema
United States District Judge